IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:17-CV-180-FL

| LENTON CREDELLE BROWN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | |
| BARBARA GIBSON, State of North Carolina, Human Resources, ERIC A. HOOKS, North Carolina Department of Public Safety, JOSH STEINS, State of North Carolina, and DENNIS DANIELS, Maury Correctional Superintendent, | ) | ORDER |
| Defendants. | ) | |

This matter is before the court on defendants' motion to dismiss for failure to state a claim, (DE 23), and plaintiff's responsive motion to amend complaint, (DE 27), and for extension of time to respond to defendants' motion to dismiss for failure to state a claim. (DE 28). For the reasons stated below, plaintiff's motion to amend complaint is denied, plaintiff's motion for extension of time is allowed, and defendants' motion to dismiss is granted. Plaintiff, proceeding pro se, is allowed 21 days from date of entry of this order to file amended complaint if plaintiff wishes to proceed with the action, with deference to the court's rulings below.

## STATEMENT OF THE CASE

Plaintiff initiated this action by filing motion for leave to proceed in forma pauperis along with complaint on December 27, 2017. On December 29, 2017, the court determined it had insufficient information on which to grant plaintiff's motion and directed plaintiff to submit

additional information. (DE 3). Plaintiff instead filed the appropriate filing fee on January 24, 2018, rendering his motion for leave to proceed in forma pauperis moot. Plaintiff's complaint was officially filed on January 26, 2018.

Plaintiff asserts claims of wrongful termination and failure to promote based on unlawful race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and 42 U.S.C. §§ 1981 and 1983.

On June 18, 2018, defendants filed motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), arguing that plaintiff's 1) complaint should be dismissed for failure to set out a short and plain statement of the claim showing that the pleader is entitled to relief, as required by Rules 8 and 10; 2) § 1981 based claims should be dismissed where all named defendants are state actors and the complaint alleges § 1983 claims covering the same factual matters as the § 1981 claims; 3) claims are barred by the statute of limitations; 4) complaint fails to state a claim for which relief can be granted; and 5) claims against state defendants are barred by the Eleventh Amendment to the United States Constitution. Plaintiff's response to said motion was due July 12, 2018.

On July 11, 2018, plaintiff filed the instant motions to amend complaint and for extension of time, seeking until August 2, 2018, within which to file response to defendants' motion to dismiss. The court inadvertently delayed its address of that motion and on August 1, 2018, plaintiff mailed his response, received and docketed by the clerk of court on August 3, 2018.[1]

No proposed amended complaint has been presented to this court; however plaintiff does attempt to clarify certain facts in his motion to amend and later filed supporting memorandum

---

[1] Without more, good cause having been shown, plaintiff's motion for extension of time, (DE 28), is ALLOWED.

(sounding also as plaintiff's response to defendants' motion to dismiss), as well as on the face of his motion for time extension. Considering the original complaint as the spine of his motion to amend, with such amplification and clarification of facts as provided in his succeeding filings, the court proceeds to consider in unison plaintiff's motion to amend and defendants' motion to dismiss below.

## STATEMENT OF THE FACTS

The facts alleged as relevant to the instant motions are as follows. In 2012, plaintiff was a correctional officer employed at Maury Correctional Institute. Plaintiff alleges that on or about April 9, 2012, a group of white officers assaulted an inmate at Maury Correctional Institute, which incident plaintiff reported. Thereafter, plaintiff was subjected to a series of retaliatory actions, including senseless and biased investigations lead by defendant Dennis Daniels ("Daniels"), wherein plaintiff was ultimately framed, along with other black officers, in an effort to cover up incidents of use of excessive force by white officers. Although not clear, it appears plaintiff was dismissed from his position on December 31, 2013, due to an accusation by a white nurse stating falsely that plaintiff was sleeping while working. (DE 8 at 4, DE 27 at 2). Plaintiff alleges that "Maury Correctional Superintendent Dennis Mccrea Daniels has used Nurse Cooke to frame[] dozens of black officers at Vidant Medical in an effort to cover up excessive use of Force incidents by white officers . . . .". (DE 8 at 5).

Thereafter, plaintiff alleges defendant Daniels, for "years after the termination," impeded plaintiff's applications for employment with other law enforcement agencies. (DE 27 at 2 ("Dennis Daniels interfere with my applying for other state positions and would have me scheduled for interviews during critical events during the termination appeals process."); see also DE 8 at 18

("Maury Correctional blacklisted me from employment with the State of North Carolina and has interfered with my at will employment repeatedly since wrongfully terminating me at Maury Correctional.")).[2]

## DISCUSSION

A.   Standard of Review

The Federal Rules of Civil Procedure require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir.2009). A properly pleaded complaint provides to an opponent "illumination as to the substantive theory under which [plaintiff] [i]s proceeding, which is the function of pleadings under the Federal Rules." Atl. Purchasers, Inc. v. Aircraft Sales, Inc., 705 F.2d 712, 717 (4th Cir.1983).

A plaintiff may amend complaint one time as a matter of course within 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), whichever is earlier. Fed.R.Civ.P. 15(a). Otherwise, however, a plaintiff may amend complaint only by leave of the court or by written consent of the defendant, although "The court should freely give leave when justice so requires." Id. This liberal rule gives effect to the federal policy in favor of resolving cases on their merits, rather than disposing of them on technicalities. See Ostrzenski v. Seigel, 177 F.3d 245, 252–53 (4th Cir.1999). Leave to amend should be freely given in the absence of "undue delay, bad

---

[2] It appears that litigation among the parties has been ongoing. Plaintiff states he filed suit on December 10, 2014, presumably in state court. (DE 8 at 16). Additionally plaintiff references a "Cross Examination" of defendant Daniels in "Brown v. NCDPS" dated February 19, 2014, (id. at 6) and deposition of defendant Daniels in "General Court of Justice Superior Court Division File No. 13-CVS-16401" dated June 11, 2015, (id. at 7).

4

faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." Foman v. Davis, 371 U.S. 178, 182 (1962).

With respect to futility, the court may deny leave to amend "if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." Katyle v. Penn Nat. Gaming, Inc., 637 F.3d 462, 471 (4th Cir. 2011). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556. In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement [,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B.  Analysis

   1.  Title VII Claims

Turning first to plaintiff's Title VII claims, the court finds that plaintiff has failed to comply with the necessary jurisdictional prerequisites pursuant to Title VII.

Under Title VII, plaintiff must exhaust his administrative remedies by first filing a charge with the Equal Employment Opportunity Commission ("EEOC"). Smith v. First Union Nat'l Bank,

202 F.3d 234, 247 (4th Cir. 2000). This charge must be filed within 180 days of each discrete adverse employment action described in the complaint unless plaintiff had previously filed with other authorities not applicable in this case. See, e.g., 42 U.S.C. § 2000e–5(e)(1); 29 U.S.C. § 626(d); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180– or 300–day time period after the discrete discriminatory act occurred"). Once the EEOC closes its investigation and plaintiff receives a right to sue letter, plaintiffs have a 90-day period in which to file their claims in court. 42 U.S.C. § 2000e–5(f)(1); see also Watts-Means v. Prince George's Family Crisis Ctr., 7 F.3d 40, 42 (4th Cir. 1993).

Plaintiff makes reference to a federal EEOC civil rights complaint, but no details are provided as to whether the EEOC has investigated plaintiff's claim, made a determination as to the claim's merit, or issued a right-to-sue notice, and no indication is given as to when any of these events may have occurred. (See DE 8 at 8); see also Spencer v. Williams, 4:09-CV-43-FL, 2009 WL 1844299, at *3 (E.D.N.C. June 16, 2009) ("However, because plaintiff failed to include the right-to-sue letter with the complaint, advising the court of the EEOC's determination, the court does not have subject matter jurisdiction over this matter.").

Accordingly, the court dismisses without prejudice plaintiff's Title VII claims for lack of subject-matter jurisdiction and grants defendants' motion to dismiss as to the same.

2. Statute of Limitations

A key dispute between the parties concerns whether a three year or four year statute of limitations applies to plaintiff's § 1981 and § 1983 claims. (See DE 27 at 2; DE 30 at 4-6).

Congress established a four year statute of limitations when a cause of action is pursuant to

a civil rights statute enacted or amended after December 1, 1990. 28 U.S.C. § 1658. Causes of action that existed prior to that deadline retained the catchall statute of limitations from state tort law, which in North Carolina is three years. Goodman v. Lukens Steel Co., 482 U.S. 656, 660-62 (1987); N.C. Gen. Stat. § 1-52. The Civil Rights Act of 1991 modified § 1981, but not § 1983. This means § 1981 actions have a four year statute of limitations, but § 1983 actions only have three years.

In Jett v. Dallas Independent School District, 491 U.S. 701, 733(1989), however, the Supreme Court held that "the express cause of action for damages created by § 1983 constitutes the <u>exclusive</u> federal remedy for violation of the rights guaranteed in § 1981 <u>by state governmental units</u>." (Emphasis added). Thus, the three year statute of limitations applicable to plaintiff's § 1983 claims are also applicable to plaintiff's § 1981 claims against defendants in their official capacity. See, e.g., Duplan v. City of New York, 888 F.3d 612, 621 (2d Cir. 2018) (applying § 1983 statute of limitations to § 1981 claim and holding "[w]e . . . join nine of our sister Circuits in concluding that § 1981 does not provide a separate private right of action against state actors."); see also Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995) ("Jett held that when suit is brought against a state actor, § 1983 is the exclusive federal remedy for violation of the rights guaranteed in § 1981 . . . . Thus, the § 1983 requirement that plaintiffs show an official policy or custom of discrimination also controls in § 1981 actions against state entities."); Stewart v. Holder, 1:16-CV-682, 2017 WL 4479612, at *4 n.7 (E.D. Va. July 19, 2017), aff'd, 710 Fed. Appx. 120 (4th Cir. 2018) ("And because § 1981 claims against governmental officials are subject to the same requirements as § 1983 claims, Virginia's two-year statute of limitations applies to plaintiff's § 1981 claim as well.") (citing Dennis); Toomer-Frazier v. Columbia, City of, 680 Fed. Appx. 244, 245 n.1 (4th Cir. 2017) ("We

have held that the Supreme Court's opinion in [Jett] limits claims against state actors for discrimination and retaliation to those brought under § 1983 . . . . Accordingly, and as the district court concluded, the standards applicable to § 1983 claims apply in this case, which was brought under § 1981."); see also Googerdy v. N.C. Agr. & Tech. State Univ., 386 F.Supp.2d 618, 624 (M.D.N.C. 2005) ("Where all named defendants are state actors and the complaint alleges a § 1983 claim covering the same factual matters as a § 1981 claim, courts may dismiss a § 1981 claim or may deem the § 1981 claim merged with the § 1983 claim.").

The court determines that a three year statute of limitations applies to all of plaintiff's § 1983 claims and to plaintiff's § 1981 claims against defendants in their official capacities. Plaintiff's claims against defendants in their individual capacities pursuant to § 1981 are governed by a four year statute of limitations.[3]

Turning to claim accrual, the court construes facts alleged in light most favorable to plaintiff and focuses on the last in time alleged violation of plaintiff's rights, plaintiff's claim of wrongful termination.[4] Plaintiff was terminated from his employment on December 31, 2013, and at some point prior to that time or at that time, plaintiff's action for wrongful termination accrued. See Chardon v. Fernandez, 454 U.S. 6, 7–8 (1981) (per curiam) (a plaintiff's cause of action for wrongful termination under 42 U.S.C. § 1983 accrued at the moment that she learned of her employer's decision to terminate her, even though the actual termination occurred later); see also Wahi v. Charleston Area Med. Ctr., 453 F. Supp. 2d 942, 957 (S.D.W. Va. 2006), aff'd sub nom.

---

[3] Because it is unclear whether plaintiff is suing defendants in their individual or official capacities, the court will consider both possibilities.

[4] Plaintiff appears to reference potential claims based on events that transpired after plaintiff's alleged wrongful termination. The court addresses these references in section B.4. below.

Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599 (4th Cir. 2009) ("Section 1981 claims for wrongful termination accrue on the date the employer notifies the employee that he is being terminated."). Plaintiff brought the instant claims on December 27, 2017, well over three years, but just under four years, after the latest time plaintiff's claims could have begun to accrue.[5]

Plaintiff attempts to avoid dismissal of any of his claims as time barred by arguing that because defendant Daniels interfered with plaintiff's applications for employment positions years following plaintiff's termination, the continuing violation doctrine applies. (DE 27 at 2). "In general, to establish a continuing violation . . . the plaintiff must establish that the unconstitutional or illegal act was a . . . fixed and continuing practice." Nat'l Adver. Co. v. City of Raleigh, 947 F.2d 1158, 1166 (4th Cir.1991) (citation omitted). In other words, if the plaintiff can show that the illegal act did not occur just once, but rather "in a series of separate acts[,] and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation." Id. at 1167 (citation omitted).

This doctrine is inapplicable here, however, where plaintiff does not establish a continuing violation of the alleged discrimination experienced by plaintiff in his workplace leading to his termination, but alleges an entirely new violation, that defendant Daniels interfered with plaintiff's applications for employment positions unrelated to plaintiff's previous employment. See A Socy. Without A Name v. Virginia, 655 F.3d 342, 348 (4th Cir. 2011) ("The first action does not establish a continuing violation because it is an allegation of an entirely new violation—a retaliation claim

---

[5] The Fourth Circuit has held in an unpublished decision that a pro se plaintiff's complaint is filed on the day the clerk of the court received it, although the complaint was later formally filed after resolution of plaintiff's motion to proceed in forma pauperis. See Robinson v. Yellow Freight System, 1989 WL 152510, at *1 (4th Cir. December 1, 1989) ("Therefore, Robinson's complaint was filed on June 16 and prior to the expiration of the limitations period. We are supported in this view by the undisputed fact that the basis for Robinson's claim was in possession of the court within the limitations period.").

instead of a discrimination claim.").

Accordingly, the court finds all of plaintiff's § 1983 claims and plaintiff's § 1981 claims against defendants in their official capacity are barred by the statute of limitations, dismisses said claims, and grants defendants' motion to dismiss as to the same.[6] However, it appears that as currently pleaded, plaintiff's remaining § 1981 claims against defendants in their individual capacities for wrongful termination may not be so barred.

3. Wrongful Termination Claim

Turning to plaintiff's remaining § 1981 claims against defendants in their individual capacities for wrongful termination, the court finds that plaintiff has failed to state a claim against defendants Barbara Gibson, Eric A. Hooks, and Josh Steins. Nowhere in plaintiff's complaint or additional alleged facts does plaintiff reference these three defendants in any way. (See DE 8, DE 27); see also Iqbal, 129 S.Ct. at 1949–50; Twombly, 550 U.S. at 556; White v. White, 886 F.2d 721, 724 (4th Cir.1989) (pro se litigant complaints must be liberally construed; however, a minimum level of factual support is required). Additionally, there is no basis on which to hold these defendants vicariously liable for the actions of defendant Daniels. See Jett, 491 U.S. at 736 (no vicarious liability under § 1981); see also Dennis, 55 F.3d at 156.

Turning to plaintiff's § 1981 claims against defendant Daniels in his individual capacity for wrongful termination, claims of discrimination in employment under § 1981 are evaluated under the

---

[6] Additionally, to the extent plaintiff is suing these defendants in their official capacity, such a suit is treated as an action against the entities represented, here the State of North Carolina and the North Carolina Department of Public Safety, see Kentucky v. Graham, 473 U.S. 159, 165-66 (1985), and is barred by Eleventh Amendment immunity, In re Sec. of Dept. of Crime Control and Pub. Safety, 7 F.3d 1140, 1145 (4th Cir. 1993) ("The claim that Barfield seeks to assert against the Secretary here is a claim against the State itself for purposes of the Eleventh Amendment, as it is directed to the Secretary in his official capacity and asks him to pay out funds from the State treasury as retroactive relief for a past wrong . . . . As such, it is barred by the Eleventh Amendment, absent a showing that the State has waived its Eleventh Amendment immunity or that Congress has abrogated that immunity").

Title VII framework. See Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004) ("Specifically, the McDonnell Douglas framework, developed for Title VII, has been used to evaluate race discrimination claims under [Title VII, 42 U.S.C. § 1981, and 42 U.S.C. § 1983]."); see also Beardsley v. Webb, 30 F.3d 524, 529 (4th Cir. 1994) ("Courts may apply the standards developed in Title VII litigation to similar [sex discrimination] litigation under § 1983.").[7]

To establish a claim under McDonnell Douglas, a plaintiff must put forth a prima facie case of discrimination by establishing that: (1) he is a member of a protected class; (2) he "suffered an adverse employment action"; (3) his job performance was satisfactory; and (4) the adverse employment action occurred "under circumstances giving rise to an inference of unlawful discrimination." Adams v. Tr. of Univ. of N.C.-Wilmington, 640 F.3d 550, 558 (4th Cir. 2011). The fourth element is met if "similarly-situated employees outside the protected class received more favorable treatment." White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004); see Swaso v. Onslow Cty. Bd. of Educ., 698 F. App'x. 745, 747 (4th Cir. 2017), as amended (Aug. 11, 2017). While a plaintiff need not plead a prima facie case to survive a motion to dismiss, a Title VII complaint is still subject to dismissal if it does not meet the ordinary pleadings standard under Twombly and Iqbal. See McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582, 584-85 (4th Cir. 2015); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010).[8]

Here, plaintiff alleges he is a black male, that he had good or very good performance

---

[7] Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex." 42 U.S.C. § 2000e–2(a)(1).

[8] Similarly, but more specifically in the context of wrongful termination claims, the Fourth Circuit has stated that to establish a prima facie case, a plaintiff must show that: "(1) he is a member of a protected class; (2) he was qualified for his job and his job performance was satisfactory; (3) he was fired; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances." Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 188 (4th Cir. 2004).

reviews, and that he was terminated from his position as a correctional officer. (See DE 8 at 4, 8). However, regarding the last factor, requiring plaintiff to show circumstances giving rise to an inference of unlawful discrimination, plaintiff has provided only bare assertions devoid of further factual enhancement. See Nemet, 591 F.3d at 255. Although plaintiff alleges defendant Daniels "has used Nurse Cooke to frame[] dozens of black officers at Vidant Medical in an effort to cover up excessive use of Force incidents by white officers," plaintiff offers no further information regarding this accusation, stating only that Nurse Cooke lied that she had seen plaintiff sleeping and fabricated evidence in support of her lies. (Id. at 4-6). Plaintiff alleges without explanation that the ensuing investigation, conducted by a Captain Cobb, "was entirely racist," but then describes aspects of the investigation as incompetent and unbelievable, not as motivated by a racial animus. (Id. at 6).[9]

Therefore, by plaintiff's own admissions, he was fired due to allegedly false accusations concerning him sleeping. (See also DE 31 at 16 ("Plaintiff was wrongfully terminate as the result of an investigation that any reasonable employer would find defective.")). Even when viewing facts in light most favorable to plaintiff, the court is unable to determine a race or sex-based discriminatory animus beyond plaintiff's bare accusations. See, e.g., Lightner, 545 F.3d at 263–64 ("By the plaintiff's own repeated admission, the real reason for his suspension was to cover up department wrongdoing. This is not race or gender discrimination and therefore is not actionable

---

[9] Plaintiff does allege that other white officers who had fallen asleep were not terminated, (DE 8 at 11, 13), but it is not possible for the court to determine based on plaintiff's allegations whether these officers were similarly-situated to plaintiff. See Lightner v. City of Wilmington, N.C., 545 F.3d 260, 265 (4th Cir. 2008) ("The similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful.").

under Title VII.").[10]

Accordingly, the court finds that plaintiff has failed to state a claim for which relief can be granted pursuant to § 1981 against defendants in their individual capacities for wrongful termination, dismisses said claims, and grants defendants' motion to dismiss as to the same.

4.  Other Claims

Finally, plaintiff makes reference to violations of the Racketeer Influenced and Corrupt Organizations Act (" RICO"), plaintiff's First Amendment Right to Free Speech, Fifth Amendment Right to Due Process, and Fourteenth Amendment Right to Equal Protection, Title 7 of the 1964 Civil Rights Act, NC Gen. Stat. 126-84, ("Whistleblower Act"), and "Federal Civil Rights Laws, International Law, and State Policy." (See, e.g., DE 8 at 13, 16, 18, DE 31 at 1). However, plaintiff fails to allege facts in support of these causes of action nor does plaintiff's allegations indicate these claims are timely under the applicable statutes of limitations. See White, 886 F.2d at 724.[11] Therefore, the court dismisses said claims and grants defendants' motion to dismiss as to the same.

In sum, plaintiff's motion to amend must be denied as futile, defendants' motion to dismiss is granted, and plaintiff's claims against defendants are dismissed without prejudice.

---

[10] Plaintiff discusses at length "numerous senseless investigations" he was subjected to following his report of the alleged incident wherein white officers assaulted an inmate; however, plaintiff does not offer any connection between these investigations and his termination, stating only with regard to his termination that "[o]n July 24, 2013, I was placed under investigation and terminated because a single white nurse who never once entered the inmate's room at Vidant Medical wrongfully accused me of sleeping." (DE 8 at 4).

[11] Plaintiff, for example, alleges in general terms a conspiracy among defendant Daniels, Assistant Attorney General Jodi Harrison, and personnel administrator Gary Parks, wherein these people "conspired . . . to cover up the fact that I was hired for a Sergeant's position at Bertie Correctional," in violation of plaintiff's constitutional rights and in violation of RICO. (See, e.g., DE 8 at 7). This accusation without more, however, fails to state a claim upon which relief can be granted. Similarly, plaintiff's allegations concerning how "the entire system is broken," multiple allegations concerning the fabrication of evidence in prior unspecified proceedings, and unexplained comments such as "Wayne Harris allegedly runs interference for corrupt Superintendent like Dennis Daniels," also fails to state a claim upon which relief can be granted. (See, e.g., id. at 10).

## CONCLUSION

Based on the foregoing, plaintiff's motion to amend complaint (DE 27) is DENIED, defendants' motion to dismiss (DE 23) is GRANTED, and plaintiff's claims are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction, as barred by the applicable statute of limitations, and for failure to state a claim. As stated above, plaintiff's motion for extension of time to file response to defendant's motion for failure to state a claim (DE 28) is GRANTED. Plaintiff is ALLOWED 21 days to file an amended complaint if he so chooses. If no amended complaint is filed in accordance with this ruling, this case will be closed.

SO ORDERED, this the 29th day of August, 2018.

_____
LOUISE W. FLANAGAN
United States District Judge